# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| DARLENE REDDING | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-cv-01811 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff brings this action asserting five statutory and common law claims for discrimination and retaliation arising out of her employment as a parking enforcement officer for the defendant District of Columbia. Defendant has moved to dismiss or, in the alternative, for summary judgment. [Dkt. # 5]. Because plaintiff failed to bring her common law, Title VII, and Americans with Disabilities Act ("ADA") claims within the applicable time limits, the Court will grant defendant's motion for summary judgment.

## FACTUAL BACKGROUND[1]

Plaintiff Darlene Redding worked as a Parking Enforcement Officer for the District of Columbia Department of Public Works from 2001 to 2008. Compl. ¶ 7; Pl.'s Opp. at ¶¶ 5, 17; Ex. A to Def.'s Supp. Reply. She is allegedly afflicted with schizoaffective disorder, mood disorder, psychosis, depressive episodes, and "cardiopathic/hypertension." Compl. ¶ 8.

---

1 This section treats as fact the admissions that plaintiff conceded by failing to meet her deadline to respond to defendant's request for admissions. *See* Order, June 7, 2011 [Dkt. # 16].

1

Plaintiff alleges that sometime between October 2004 and October 2005, she was sexually assaulted by two male coworkers.[2] Pl.'s Opp. at ¶ 7; Ex. A to Pl.'s Opp.; Ex. A to Def.'s Supp. Reply. She claims that she reported the sexual assault to her local union and the Metropolitan Police Department. Pl.'s Opp. at ¶¶ 8–9; Ex. A to Pl.'s Opp.

On July 3, 2007, plaintiff filed a signed Charge of Discrimination form ("Charge Form") with the D.C. Office of Human Rights ("OHR") and cross-filed with the Washington Field Office of the EEOC, alleging that she was discriminated against, retaliated against, and subjected to a hostile work environment based on her gender and disability. Pl.'s Opp. at ¶ 18; Ex. A to Def.'s Supp. Reply; Def.'s Supp. Reply at 1–3. As evidence, she cited the sexual assault as well as other incidents. Ex. A to Def.'s Supp. Reply, *authenticity conceded by plaintiff*, *see* [Dkt. # 16]. The signed form also stated "I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures." *Id.*

The OHR issued a Letter of Determination rejecting all three claims on May 27, 2008. Ex. B to Def.'s Supp. Reply, *authenticity conceded by plaintiff*, *see* [Dkt. # 16]; Def.'s Supp. Reply at 1–3. The letter was mailed to plaintiff's counsel. *Id.* Plaintiff asserts that she was also informed that a "Right to Sue Letter" (also known as a "Dismissal and Notice of Rights") would follow, which would permit her to file an action in court. Pl.'s Opp. at ¶ 21.

---

2 Although plaintiff apparently reported the incident to her employer as having occurred sometime between October 2004 and October 2005, Pl.'s Opp. at 9; Ex. A to Pl.'s Opp., her opposition memorandum identifies the date of the sexual assault as December 2004. Pl.'s Opp. at ¶ 7; Pl.'s Statement of Facts ¶ 7. Plaintiff also identified December 2004 as the date of the sexual assault on the Charge of Discrimination form that she submitted to the D.C. Office of Human Rights and the Washington Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC"). Ex. A to Def.'s MTD/SJ, *authenticity conceded by plaintiff*, *see* [Dkt. # 16].

The EEOC issued the Right to Sue Letter on February 24, 2009. Ex. C to Def.'s Supp. Reply; Def.'s Supp. Reply at ¶¶ 14–16.[3] It was addressed to Darlene Redding at the same street address that she had identified as her "home address" on her Charge Form, which is also the same address listed on the caption of the complaint in this case. Ex. C to Def.'s Supp. Reply, *authenticity conceded by plaintiff*, *see* [Dkt. # 16]; Def.'s Supp. Reply at ¶¶ 15–16; Compl. at 1. But plaintiff states that she did not receive it. According to plaintiff:

> From June 17, 2009 through August 2, 2010, Plaintiff contacted the EEOC's Washington Field office to request a Right to Sue Letter. Plaintiff was informed by [an EEOC employee], on August 2, 2010, that a Right to Sue letter was mailed to her on February 24, 2009. Plaintiff informed [him] that she did not receive a Right to Sue Letter and she wanted to know if a letter was sent to her attorney of record. Plaintiff was informed that the Right to Sue Letter was not sent to her attorney.
>
> Plaintiff's counsel informed [the EEOC employee] that she is counsel of record and a Right to Sue Letter should have been sent to counsel, especially since all parties were put on notice that Plaintiff required periodic hospitalization because of her disability.[4]

Pl.'s Opp. at ¶ 23–24. After that conversation, a second copy of the Right to Sue Letter was mailed to plaintiff, and she filed the complaint in this case within ninety days of receiving it. *Id.* ¶ 25.

Plaintiff filed her complaint on October 22, 2010. [Dkt. # 1]. Counts I through III allege gender discrimination, hostile work environment, and retaliation in violation of Title VII of the

---

3   Defendant mistakenly cites the year as 2008 instead of 2009. Def.'s Statement of Facts ¶ 21; Def.'s Reply at 5. The Right to Sue Letter shows the date as February 24, 2009. Ex. C to Def.'s Supp. Reply, *authenticity conceded by plaintiff*, *see* [Dkt. # 16].

4   There is no evidence that counsel contacted the EEOC to make this request on plaintiff's behalf at any time between the issuance of the Letter of Determination by the OHR in May of 2008 and August of 2010.

Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (as amended).[5] Count IV alleges disability discrimination in violation of the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12102, 12111(8).[6] Count V alleges assault and battery.[7] Defendant has moved to dismiss or, in the alternative, for summary judgment. [Dkt. # 5].

Defendant contends that Counts I through IV are barred by plaintiff's failure to file this action within ninety days of the issuance and receipt of the Right to Sue Letter.[8] Def.'s MTD/SJ at 1; Def.'s Mem. at 10. It further argues that Count V is barred by plaintiff's failure to file a required notice of claim and by the applicable statute of limitations. Def.'s MTD/SJ at 1; Def.'s Mem. at 6–9.

## STANDARD OF REVIEW

### I.  Motion to Dismiss Under Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

---

[5] One sentence in Count II (hostile work environment) alleges that harassment in the workplace "was pointed at the Plaintiff because of *his race and/or national origin*." Compl. ¶ 23 (emphasis added). However, since this clause misidentifies plaintiff's gender and is incongruous with the rest of the Complaint, the Court reads it as a typographical error and will consider the hostile work environment count to be based on gender and disability discrimination. At the same time, the Court's assumption has a negligible effect, since it will dismiss Count II for plaintiff's failure to timely file this action.

[6] Plaintiff's Complaint does not actually identify the statutory basis for Count IV. *See* Compl. ¶¶ 30–33. However, since the Preliminary Statement section of the Complaint alleges that defendant violated the ADA, and since Count IV tracks the language of the ADA, the Court will construe Count IV as arising under the ADA.

[7] The Preliminary Statement section of the Complaint also alleges that defendant violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, however none of the six counts raise a claim that arises under that statute.

[8] The Complaint actually argues that "[p]laintiff's Title VII and ADA claims set forth in Counts I through III are barred . . ." but since the ADA claim is set forth in Count IV, the Court will construe the motion as seeking dismissal of Counts I through IV based on plaintiff's failure to file this action within ninety days of the issuance and receipt of the Right to Sue Letter.

*Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

A defendant may raise a statute of limitations affirmative defense via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), citing *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981).

## II. Motion for Summary Judgment Under Rule 56(a)

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

The Court may also decide statute of limitations questions at the summary judgment stage. *Hancock v. HomEq Servicing Corp.*, 526 F.3d 785, 785 (D.C. Cir. 2008) (affirming the District Court's grant of summary judgment because the statute of limitations barred the claims); *Nelson v. Am. Red Cross*, 26 F.3d 193, 196, 198 (D.C. Cir. 1994) (same).

## ANALYSIS

I. **Counts I, II, III, and IV are Barred by Plaintiff's Failure to Timely File This Action Within Ninety Days after the EEOC Gave Notice of the Right to Sue**

"Title VII 'is remedial legislation dependent for its enforcement on laymen,' and . . . 'resort to technicalities to foreclose recourse to administrative or judicial processes is particularly inappropriate.'" *Rozen v. District of Columbia*, 702 F.2d 1202, 1203–04 (D.C. Cir. 1983) (per curiam), quoting *Bethel v. Jefferson*, 589 F.2d 631, 642 (D.C. Cir. 1978). Nonetheless, Congress has directed that a litigant is only entitled to bring a Title VII action in court if she files it within ninety days after the EEOC gives notice of the right to sue. 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . ."); *see also Dougherty v. Barry*, 869 F.2d 605, 609–10 (D.C. Cir. 1989). Such notice generally takes the form of a Dismissal and Notice of Rights ("Right to Sue Letter" or "Letter"). *See* 29 C.F.R. § 1601.28. The ninety day bar also applies to ADA claims. 42 U.S.C. § 12117; *see Dahlman v. AARP*, 791 F. Supp. 2d 68, 74 (D.D.C. 2011); *Stewart v. District of Columbia*, No. 04-1444, 2006 WL 626921, at *3 (D.D.C. Mar. 12, 2006), citing *Conner v. Reckitt & Coleman, Inc.*, 84 F.3d 1100, 1102 (8th Cir. 1996).

As a preliminary matter, the Court cannot dismiss Counts I through IV under Rule 12(b)(6) because the facts that give rise to defendant's time bar argument are not clear on the face of the complaint. *See Firestone*, 76 F.3d at 1209; *cf. Smith-Haynie*, 155 F.3d at 577–78. So

the Court must consider whether summary judgment is appropriate, which in turn depends on when the ninety day bar began to run.

The ninety day bar is akin to a statute of limitations. *See Bethel*, 589 F.2d at 641 n.64; *Smith-Haynie*, 155 F.3d at 579. As such, the defendant bears the burden of proving the plaintiff's failure to bring the action within the ninety day period. *Dahlman*, 791 F. Supp. 2d at 76, citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).[9]

Defendant contends that the ninety day period started running when plaintiff received the Right to Sue Letter, "shortly after the date that it was mailed on February 24, 2009." Def.'s MTD/SJ at 1; Def.'s Mem. at 10. The Supreme Court identifies the date of a claimant's receipt of the letter as the triggering event, not the date of the EEOC's issuance of it. *Plunkett v. Roadway Exp., Inc.*, 504 F.2d 417 & n.2 (10th Cir. 1974), citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973); *see also Perry*, 738 A.2d at 1225.[10] Furthermore, a Right to Sue Letter is considered received by a claimant when the notice reaches either the claimant or her attorney, whichever comes first.

---

9  If the defendant meets its burden, the burden shifts to the plaintiff to argue that equitable principles, such as equitable tolling, apply. *Bowden*, 106 F.3d at 437; *Dahlman*, 791 F. Supp. 2d at 76. However, since plaintiff has not raised any equitable principles here, the Court will not consider them *sua sponte*. *See Bayer v. U.S. Dept. of Treasury*, 956 F.2d 330, 333 (D.C. Cir. 1992) ("The Title VII plaintiff bears the burden of pleading and proving in the district court 'equitable reasons' for noncompliance with [statutory time limits]."), citing *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982).

10  The Supreme Court's determination that the statutory period only starts running when the plaintiff receives the notice was actually based on an earlier version of the provision, which stated: "If . . . the Commission has been unable to obtain voluntary compliance with this title, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge…." Civil Rights Act of 1964, Pub. L. No. 88-352, § 706, 78 Stat. 253, 259. However, the D.C. Court of Appeals as well as several federal circuit courts have held that the Supreme Court's interpretation applies equally to the current version of the statute because both versions pinpoint the pertinent time as the "giving of such notice." *Plunkett*, 504 F.2d at 418 & n.2; *see also Perry v. Gallaudet Univ.*, 738 A.2d 1222, 1225 (D.C. 1999) (citing similar decisions in the Second, Fourth, and Sixth Circuits).

*McKay v. England*, No. 01-2535, 2003 WL 1799247, at *1–2 (D.D.C. Mar. 27 2003), citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990).

"[N]ormally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice" and that "a mailed document is received three days after its mailing." *Perry*, 738 A.2d at 1225–26, citing *Sherlock v. Motefiore Med. Ctr.*, 84 F.3d 522, 525–26 (2d Cir. 1996); *Griffin v. Acacia Life Ins. Co.*, 151 F. Supp. 2d 78, 80 (D.D.C. 2001); *Lucas-Bolden v. Potter*, No. 04-2074, 2005 WL 3273725, at *3–4 (D.D.C. Sept. 29, 2005). Here, the parties agree that the Right to Sue Letter was dated February 24, 2009 and addressed to plaintiff at her home address. Ex. C to Def.'s Supp. Reply, *authenticity conceded by plaintiff*, *see* [Dkt. # 16]; Def.'s Supp. Reply at ¶¶ 14–20. Thus, plaintiff was entitled to file her Title VII and ADA claims within ninety-three days of that date. Since plaintiff filed the Complaint in this case 605 days after the date on the Right to Sue Letter, her claims are barred.

The Court notes that this case does not involve the rigid imposition of a mere technicality; the complaint was approximately seventeen months late. The Court further notes that plaintiff does not actually make any argument in her memorandum in opposition to defendant's motion for judgment on these grounds.[11] The Court surmises, though, that plaintiff is seeking to rebut the presumption that she received the letter three days after it was mailed and

---

11  Plaintiff's opposition does not actually advance any legal argument in opposition to defendant's motion to dismiss or for summary judgment on Counts I through IV. However, in the statement of facts section of her opposition motion, plaintiff states that her counsel told an EEOC employee that "a Right To Sue Letter should have been sent to counsel, especially since all parties were put on notice that Plaintiff required periodic hospitalization because of her disability." Pl.'s Opp. at ¶ 24. While the Court could arguably treat the motion as conceded, in an effort to accord the nonmoving party the benefit of all inferences, it will instead deem that statement to be an argument in opposition to defendant's motion, and it will frame and then address plaintiff's argument to the best of its ability given the limits of the pleading with which it was provided. *See N.S. ex rel. Stein*, 709 F. Supp. 2d at 65.

that it is her contention that the dispute on that issue precludes summary judgment. She does not contest the fact that the EEOC mailed the Right to Sue Letter to her home address on February 24, 2009; she simply contends that she never received it. Pl.'s Opp. at ¶ 24; Pl.'s Statement of Issues in Dispute ¶ 8. And she suggests that the reason she did not receive it was because she "required periodic hospitalization because of her disability." Pl.'s Opp. at ¶ 24. Plaintiff further states that since "all parties were put on notice" of her periodic hospitalization, the Letter "should have been sent to counsel[.]" *Id*.

The D.C. Circuit does not appear to have directly addressed the question of whether the ninety day period starts to run when the Right to Sue Letter is delivered to the plaintiff's mailbox or on the date that the plaintiff opens the mailbox and takes the envelope into her hand. Since either date would be difficult to ascertain, other courts that have addressed the issue have made the choice based upon which party bears the responsibility for the fact that there was a delay in the receipt of the Letter after it was mailed. *See O'Neal v. Marine Midland Bank*, 848 F. Supp. 413, 417–18 (W.D.N.Y. 1994) (summarizing the relevant case law across circuits); *see, e.g.*, *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316–17 (7th Cir. 1984); *Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524–25 (11th Cir. 1991); *Sylvester v. Tracor, Inc.*, No. 84-1826, 1986 WL 192664, at *2–4 (D.D.C. Sept. 26, 1986); *Bond v. Am. Med. Assoc.*, 764 F. Supp. 122, 124–25 (N.D. Ill. 1991).

These courts have found that a claimant has constructive receipt of a Right to Sue Letter at the time it is delivered to the address on file with the EEOC if she is the one at fault for the delay in obtaining it. Thus, delivery triggers the running of the ninety-day period. For example, in *Stallworth*, 936 F.2d 522, the plaintiff changed her address without informing the EEOC, so even though her Right to Sue Letter was delivered to the address on file with the EEOC, she

never actually received it. Declaring that the "plaintiff is required to assume some minimal responsibility to ensure receipt," the Eleventh Circuit held that that the plaintiff had constructive receipt of the Letter as soon as it was delivered to the address on record, and so the ninety day period began running at that time. *Stallworth*, 936 F.2d at 524; *see also Sylvester*, 1986 WL 192664, at *3 ("Where a claimant fails to fulfill his responsibility to notify the EEOC of his current address, he cannot claim an extension of the limitation period because he did not receive the EEOC's notification of the dismissal of his charge.").

On the other hand, where the plaintiff is not at fault for the delay, courts have held that the ninety day period starts running only when she actually receives the Letter. *See Bond*, 764 F. Supp. at 125 ("Claimants who do not receive their right to sue letters, through no fault of their own, should not be penalized for the delay. . . . . However, if the delay in receiving the right to sue letter is due to the claimant's own negligence, the ninety day period begins to run when the letter is delivered to the most recent address."); *see, e.g.*, *Sousa v. Nat'l Labor Relations Bd.*, 817 F.2d 10, 10–11 (2d Cir. 1987) (finding that plaintiff's failure to check his mailbox for five days was not unreasonable and thus holding that the ninety day period began running only once he found the Right to Sue Letter in his mailbox, not when it was delivered).

Here, plaintiff apparently failed to actually receive the Right to Sue Letter because she failed to collect her mail, not because the EEOC made a mistake that was beyond her control. Indeed, she does not allege that she was hospitalized for the entire ninety day period after the letter was sent; she merely alleges that she "required *periodic* hospitalization because of her disability." Pl.'s Opp. at ¶ 24 (emphasis added). Plaintiff has provided the Court with no information concerning either the dates or the duration of her hospitalizations; indeed, she has not even specifically indicated that she was in fact hospitalized at the time the letter was mailed.

And, while the Court gives plaintiff the benefit of the presumption that she was periodically in the hospital because of her disability, and that the EEOC at some point had notice of the fact that she occasionally required inpatient treatment, plaintiff did nothing to ensure her actual receipt of the Letter for more than a year after she was informed that the Right to Sue Letter would issue. *Id.* at 4–5. She could have officially changed her address with the EEOC so that all mail was sent to her attorney, or her attorney could have handled that step for her. Alternatively, she or her attorney could have arranged for someone to check her mail while she was hospitalized. Furthermore, while plaintiff alleges that the EEOC should have known about her periodic hospitalization, the EEOC cannot be expected to study the files of each claimant to decide where the claimant would prefer to receive mail. *See St. Louis*, 744 F.2d at 1316–17 ("It is unreasonable to expect the EEOC to pore over its files, and those of state administrative agencies, in an effort to ascertain which of the addresses contained therein is correct.").

While it is true that this case is slightly different than cases where employees failed to check their mailboxes out of sheer negligence, plaintiff does not allege any facts that would suggest that the EEOC was at fault. So, the Court must find that the ninety day limitations period began running on February 27, 2009 – three days after the EEOC sent the Right to Sue Letter to plaintiff's home address. Plaintiff was required to raise her Title VII and ADA claims in court by May 28, 2009 – ninety days later. Since plaintiff did not raise her claims in court until October 22, 2010, when she filed the Complaint in this case a year and a half later, Claims I

through IV are barred by the ninety day statutory limit.[12] Plaintiff's failure to press the point in her opposition suggests that she recognizes, even if she does not officially concede, that this is the appropriate result.

---

[12] Other courts in this district have utilized the doctrine of equitable tolling to forgive a failure to meet the ninety day limitations period where a plaintiff, through no fault of her own, fails to actually obtain the Right to Sue Letter. *See, e.g.*, *Ryczek v. Guest Services, Inc.*, 877 F. Supp. 754, 757–58 (D.D.C. 1995). However, as mentioned above, it is the plaintiff's burden to raise and prove an equitable tolling defense. *See infra* note 8. Since plaintiff in this case does not even raise equitable tolling, the Court need not consider it *sua sponte*. And plaintiff has not come forward with a factual presentation that would support the application of the doctrine: for example, she has not presented the Court with facts indicating whether and when she was hospitalized and what exactly for; she has not indicated what arrangements were made, if any, to deal with her mail during any period of hospitalization or why such arrangements could not have been made; she does not indicate where any other mail that accumulated during any period of hospitalization was maintained; and she does not begin to provide any facts that would justify tolling the limit for an additional 512 days after the ninety day period expired. *Cf. Brooks v. Derwinski*, 741 F. Supp. 963, 965 (D.D.C. 1990) (allowing equitable tolling when a pro se plaintiff filed only one day late). Thus, the same factors the Court has considered in holding that the ninety day period started running as soon as plaintiff had constructive receipt of the Right to Sue Letter would defeat an equitable tolling defense here. A court should only exercise its equitable power to toll a statute of limitations "in extraordinary and carefully circumscribed instances," *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988), and there is no record of such extraordinary circumstances here. Further, "district courts should not invoke [equitable tolling] in cases where the plaintiff has failed to act diligently to preserve her claim." *Baker v. Henderson*, 150 F. Supp. 2d 17, 21–22 (D.D.C. 2001), citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984); *see also Snead v. Mosbacher*, No. 89-2508, 1991 WL 7166, at *2–3 (Jan. 9, 1991) (holding that an attorney's delay in finding the Right to Sue Letter in his mail because he was out of town does not warrant equitable tolling).

## II. Plaintiff's Assault and Battery Claim (Count V) is Barred by the Applicable Statute of Limitations under D.C. Code § 12-301

Defendant next contends that Count V is barred by the applicable statute of limitations and by plaintiff's failure to file a notice of claim within the statutory six month limit.[13] Def.'s MTD/SJ at 1; Def.'s Mem. at 6–8. Because the Court finds that plaintiff failed to bring her assault and battery claim within the applicable statute of limitations, it will not reach the notice of claim issue.

As with Counts I through IV, the Court cannot dismiss Count V under Rule 12(b)(6) because the facts that give rise to defendant's statute of limitations argument are not clear on the face of the complaint. *See Firestone*, 76 F.3d at 1209; *cf. Smith-Haynie*, 155 F.3d at 577–78. However, since there is no genuine dispute of material fact here, and the Court finds as a matter of law that Count V is barred by the statute of limitations, the Court will grant defendant's motion for summary judgment. *See Hancock*, 526 F.3d at 785; *Nelson*, 26 F.3d 196, 198.

D.C. Code section 12-301 imposes a general three-year statute of limitations on all civil actions brought under D.C. law, except for certain enumerated types of actions for which it designates distinct limitations periods. Defendant claims that Count V falls under subsection four, which imposes a one-year statute of limitations on claims for a list of intentional torts, including assault and battery.[14] Def.'s Mem. at 9; Def.'s Supp. Reply at 5. Subsection four provides: "Except as otherwise specifically provided by law, actions for the following purposes

---

13   Defendant also raises defenses which construe Count V as alleging assault and battery claims under Section 1983 and Title VII; however, given that plaintiff does not raise its assault and battery claim under either of those two federal statutes (and the Court is skeptical that either of those statutes could even be invoked for a claim of assault and battery), the Court will address only those of defendant's defenses that construe Count V as alleging a common law claim.

14   The Court notes that parts of defendant's memo erroneously refer to the assault and battery count as Count IV. Def.'s Mem. at 1, 9. The assault and battery count is actually Count V. Compl. at 7.

may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: … (4) for … assault [and] battery …-- 1 year." D.C. Code § 12-301(4); *see Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 744 (D.C. Cir. 1995) ("[T]he District of Columbia Courts have made it clear that § 12-301(4)'s one-year limitations period governs only the specific enumerated torts; it does not apply generically to all intentional torts."). And as such, D.C. courts have commonly applied subsection four to claims for assault and battery.[15] *See, e.g., Tibbs v. Williams*, 263 F. Supp. 2d 39, 40, 44 (D.D.C. 2003) (applying section 12-301(4) to a common law assault claim); *Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 550 (D.D.C. 1981) (same for assault and battery); *Kelton v. D.C.*, 413 A.2d 919, 922–23 (D.C. 1980) (applying section 12-301(4) to a common law battery claim even though plaintiff characterized defendant's act as negligence); *D.C. v. Tinker*, 691 A.2d 57, 63–64 (D.C. 1997) (same for assault and battery); *Maddox v. Bano*, 422 A.2d 763, 764 (D.C. 1980) (same).

However, as plaintiff argues, there are some situations in which D.C. courts will not apply the one year limitations period under subsection four to an assault and battery claim:

> It has been held, . . . under an earlier version of the District of Columbia statute, that an action against an employer for an assault inflicted by an employee acting within the scope of his authority, rather than in consequence of an express direction by the employer, is not in trespass but is for the employee's negligence in the performance of the employer's lawful business, and summons application of the three-year limitation period [under D.C. Code § 12-301(8)].

*Alley v. Dodge Hotel*, 551 F.2d 442, 446 n.22 (D.C. Cir. 1977), citing *Mellon v. Seymoure*, 12 F.2d 836, 837 (D.C. Cir. 1926), *Lisner v. Hughes*, 258 F. 512 (D.C. Cir. 1919). Although the

---

15 "When construing provisions of the D.C. Code – including the DCHRA – this Circuit 'defer[s] to the District of Columbia Court of Appeals on questions of statutory interpretation.'" *Musgrove v. District of Columbia*, 775 F. Supp. 2d 158, 171 (D.D.C. 2011), citing *United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991).

Court notes that plaintiff does not appear to allege that the two employees who allegedly assaulted her were acting in the scope of their authority, plaintiff certainly does not allege that the sexual assault was the consequence of an express direction by the employer. So, the three year limitations period seems to be the more applicable of the two options. But the Court need not decide that question definitively because Count V is barred under either limitations period.

"Where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc). Plaintiff's right to maintain her assault and battery action, therefore, began running at the time of the sexual assault. *See* Pl.'s Opp. at ¶¶ 7–9.[16] Although the parties contest the exact date of the assault, they agree that it occurred sometime between October 2004 and October 2005. Since any date within that time frame falls more than three years before plaintiff filed the complaint in this action (October 22, 2010), Count V is barred by the statute of limitations.

---

16  Where the existence of the injury is not readily apparent (*e.g.* in many medical malpractice cases), D.C. courts apply the discovery rule, which sets the date when the statute of limitations starts running at the time "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989). At least one court has applied the discovery rule in an assault and battery case, holding that "where a plaintiff has alleged total repression of any recollection of sexual abuse which allegedly occurred during her childhood, her claim does not accrue until the date that she recovered her memory to the extent that she knows, or reasonably should know, of "some injury, its cause, and related wrongdoing." *Farris v. Compton*, 652 A.2d 49 (D.C. 1994), quoting *Knight*, 553 A.2d at 1236. Since plaintiff here does not allege repression of her recollections of sexual abuse, the Court finds no reason to apply the discovery rule.

## CONCLUSION

For the foregoing reasons, the Court will deny defendant's motion to dismiss or in the alternative for summary judgment [Dkt. # 5] as to the motion to dismiss and grant it as to the motion for summary judgment. A separate order will issue.

/s/ Amy B Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: December 15, 2011